**Vincent H. DELGADO, as Next Friend of Elizabeth Delgado, a Minor, Appellant,**

v.

**Michael C. YANDELL, Appellee.**

**No. 17226.**

Court of Civil Appeals of Texas, Fort Worth.

May 21, 1971.

Rehearing Denied June 18, 1971.

Puff & Jameson, and Jim Jameson, Fort Worth, for appellant.

Brown, Crowley, Simon & Peebles, and Richard N. Haskell, Fort Worth, for appellee.

OPINION

LANGDON, Justice.

This appeal is from a summary judgment.

On February 2, 1968, Isabel Delgado, wife of Vincent Delgado, was riding as a passenger in an automobile belonging to and being driven by Ruth T. Dorton when it was involved in a collision at an intersection with a vehicle operated by Michael C. Yandell. Isabel Delgado was pregnant at the time of the collision. As a result of such pregnancy Elizabeth Delgado was born to Isabel Delgado on August 16, 1968. It is alleged that the child, born approximately six and one-half months after the collision, sustained permanent and disabling injuries as a result of such collision.

A motion for summary judgment, under Rule 166, T.R.C.P., was filed by Michael C. Yandell alleging there was no question of fact involved since as a matter of law, the infant, Elizabeth Delgado, was not a

viable fetus at the time of the collision. The trial court severed for separate trial the cause of action on behalf of the minor, Elizabeth Delgado, and granted Yandell's motion for summary judgment.

The judgment dismissing the minor's cause of action recited that at the time of the collision in question Elizabeth Delgado was not a viable fetus and that a cause of action based upon claimed injuries to a non-viable fetus does not exist. This appeal from such judgment was duly perfected.

We reverse and remand.

The judgment of the trial court further recited that, " * * * the court having considered the pleadings of the parties, the motion and answer thereto, the depositions on file, and having heard arguments of counsel. * * *"

On inspection of the record brought to this Court it appeared that the depositions referred to by the court in its judgment were not included. These omissions were called to the attention of the parties prior to the date of submission and again at the time of the arguments on the date of submission in order that the omitted items might, if necessity required, be brought up to this Court under Rules 428 and 429, T.R.C.P. On each of such occasions, both before submission of this cause and at the time of the arguments on the date of submission, this Court was advised by the attorneys for all parties that the omitted items did not contain any matter which would add to that contained in the pleadings of the parties. The depositions, according to the attorneys for the parties, related solely to the date, time, place and mechanics of the collision, the pregnancy of Mrs. Delgado at the time of the collision, the date of birth of the child thereafter and her health problems after birth.

Pursuant to Rule 379, T.R.C.P., the depositions and the affidavit were inspected by this Court. We concur with the views expressed by the attorneys.

In view of the stipulation of the attorneys made at the times designated above this Court will consider the summary judgment of the trial court on the severed action pertaining to the minor child as being based solely upon the pleadings of the parties and that nothing contained in the depositions or the affidavit above described supplemented such pleadings or served as a basis for the judgment of the court.

In Leal v. C. C. Pitts Sand and Gravel, Inc., 413 S.W.2d 825 (San Antonio Tex. Civ.App., 1967, reversed 419 S.W.2d 820), Justice Cadena, in dissenting, said: "It is the purely legalistic concept that the unborn child is but a part of its mother, which is contrary to scientific fact and common sense.

"In any event there would seem to be no obstacle to resort to the same 'fiction' in the prenatal injury cases, unless we are prepared to argue that the right to life and the right to begin life with a sound body do not 'in fairness' belong to the unborn child, or else that those rights are not as worthy of protection as the right to inherit a mule.

"It is true that the existence of a duty, and the breach of such duty, constitute the foundation of liability in negligence law. But this does not compel the conclusion that the person to whom the duty is owed must be known or even knowable. It is doubtful that anyone would seriously argue that the pharmacist who negligently prepares a drug today should be allowed to escape liability for the death of a child, born next month, to whom the medicine was administered, on the ground that he owed no duty to the child who was unborn at the time the negligent act was committed."

In reversing the majority opinion in the Leal case the Texas Supreme Court said: "The dissenting opinion of Justice Cadena comprehensively presents the case for recognition of a right of action for prenatal injuries under the facts here presented, and we are in agreement with this opin-

ion." Further, the Court said: "Chief Justice Barrow points out in the majority opinion below, with supporting citations, that some authorities do not recognize a cause of action for prenatal injuries unless the fetus is viable at the time of injury, and that other authorities do not do so unless the child is born alive. These questions are not before us and are reserved."

In 1890 the Supreme Court of Texas adopted the opinion of the Commission of Appeals in Nelson v. Galveston, H. & S. A. Ry. Co., 78 Tex. 621, 14 S.W. 1021, holding that a posthumous child was entitled to recover damages for the death of his father, resulting from injuries inflicted by the alleged negligence of the Railway Company.

In Nelson the father of the plaintiff was killed instantly on April 25, 1882, and the plaintiff was born on November 7, 1882, some six months thereafter. Thus, under the usual circumstances of 9 months pregnancy, the mother of the plaintiff in Nelson was about three months pregnant at the time of the father's death on April 25, 1882. While the Nelson case involved the construction of a statute the contentions on the part of the parties to such suit were similar to those here involved. The reasoning in Nelson which led to the decision favorable to the minor child is just as pertinent and applicable to the facts of the case at bar.

It occurs to us that the same sound reasoning which would entitle a child to recover damages for the death of his father would certainly be equally persuasive or perhaps more persuasive to the point of granting to him the right to recover damages for his own personal injuries upon proof that such injuries, if any, were directly and proximately caused by the negligence of another.

We are impressed with the logic and the propriety of what is said beginning on page 1071, § 8, of the "Editorial comment," found in 10 A.L.R.2d 1059, "Anno.—Prenatal Injury as Ground of Action." Since the "Editorial comment," above referred to, expresses our views with reference to the disposition of this appeal it is set out in the paragraphs next following.

"One cannot examine the cases in which a child, physically or mentally deformed for life as a result of prenatal injuries caused by the wrongful act of another, has been denied a right of recovery for such injuries, without being impressed by the harshness of such a result.

"As stated in Montreal Tramways v. Leveille (1933) Can.S.C. 456, (1933) 4 D.L. R. 337, if a child after birth has no right of action for prenatal injuries, we have a wrong inflicted for which there is no remedy, * * * and if such a right of action is denied, the child would be compelled, without any fault on its part, to go through life carrying the seal of another's fault and bearing a very heavy burden of infirmity and inconvenience without any compensation.

"It is difficult to see the logic in recognizing the unborn child as in esse with respect to property rights and rights of inheritance, and also in the field of criminal law, yet denying it recognition so as to afford it protection against the torts of others. Whether the assignment of a legal personality to an unborn child is based upon scientific truth or upon legal fiction, the reason for the adoption of a rule favoring the unborn child is stronger when we are dealing with the health of the child and his ability after birth to seek his complete happiness and perform his full duty as a citizen and member of society than when we are dealing merely with his property rights.

"The decisions in Bonbrest v. Kotz (1946, D.C.Dist.Col.) 65 F.Supp. 138; Cooper v. Blanck (1923, La.App.) 39 So.2d 352; Verkennes v. Corniea (1949) [229] Minn. [365], 38 N.W.2d 838, 10 A.L.R.2d 634; and Williams v. Marion Rapid Transit, Inc. (1949) 152 Ohio St. 114, 87 N.E.2d

334, 10 A.L.R.2d 1051, all supra, § 4, represent a definite departure from the rigidity of the more orthodox view, and may be indicative of a trend toward the extension of the doctrine that an unborn child will be regarded as in esse when beneficial to the child.

"It is true that such decisions seem limited by implication to instances wherein the injured child was viable and capable of independent existence when the injuries were sustained. However, the holding in Montreal Tramways v. Leveille (1933) Can.S. C. 456, (1933) 4 D.L.R. 337, supra, § 4, appears broad enough to support recovery for prenatal injuries sustained at any prenatal stage provided the injured child was born alive and survived. Such a result would seem desirable."

Reference is made to 10 A.L.R.2d 1059, supra, and to 10 A.L.R.2d 634, and the opinions of the Court of Civil Appeals and the Texas Supreme Court in the Leal case which are reported, respectively, in 413 S. W.2d 825 and 419 S.W.2d 820, supra, and the cited authorities. Particular reference is made to paragraphs Nos. 2, 3 and 4 of 10 A.L.R.2d 1059, concerning the views denying and favoring a child's right of recovery.

We hold that subject, of course, to the proof required in such cases a cause of action does exist for prenatal injuries sustained at any prenatal stage provided the child is born alive and survives.

The judgment of the trial court is reversed and the cause remanded for trial on the merits.

MASSEY, Chief Justice (concurring).

I concur in the result.

However, I am persuaded on equitable principles, particularly in respect to right to invoke equity in order to afford a remedy when to withhold relief would be unconscionable.

We are not troubled by a complication which might have resulted had the plaintiff's parents, at some time prior to her birth, treated or attempted to treat her injuries as part of the personal injuries of the mother.

I believe that plaintiff's right to enforce a cause of action came into existence at the moment of her birth although the event giving rise thereto occurred at an earlier time. The matter of plaintiff's viability as a foetus at the time of the event resulting in her damages would be wholly immaterial.